CARQUEST of HOT SPRINGS, INC. and Sam R. Clark, Jr. *v.* GENERAL PARTS, INC.

04-827 204 S.W.3d 53

Supreme Court of Arkansas
Opinion delivered February 24, 2005

---

26

*David A. Hodges*, for appellants.

*Owen & Sherman, P.A.*, by: *Gill Elrod Ragon*, for appellee.

ANNABELLE CLINTON IMBER, Justice. This case was commenced when the appellee, General Parts, Inc. ("GPI"), filed a complaint for replevin against the appellants, Carquest of Arkansas, Inc. and Sam R. Clark, Jr. ("Carquest") on December 6, 1999. According to the complaint, GPI is "a wholesale distributor of auto parts, selling, inter alia, to various CARQUEST dealers." GPI's complaint alleges that GPI regularly sold automotive and tractor parts to Carquest and that, during the course of this relationship, Carquest executed a security agreement in favor of GPI granting GPI a security interest in "its inventory, proceeds from the sale of that inventory, accounts receivable, proceeds from accounts receivable, equipment and proceeds from the equipment." GPI maintains that Carquest was disposing of the inventory and was in default under the terms of the security agreement. The complaint further states:

> 9. Up until about November 1, 1999, [Carquest has] regularly paid the invoices of [GPI]. However, [Carquest] tendered a payment in November to [GPI] in the sum of $23,000.00. That check was returned to [GPI] with a PAYMENT STOPPED notation, making it clear that [Carquest] intended to obtain product by trick and device without paying for it. A copy of that check is attached hereto as Exhibit D. [Carquest] is now indebted to [GPI] in the total sum of $50,923.78 as and for products sold and delivered to [Carquest] and is delinquent in the payment of the indebtedness to [GPI].

GPI's complaint requests that the court give GPI possession of the collateral, issue a temporary restraining order and preliminary injunction to prevent Carquest from disposing of the property covered by the security agreement, and award a monetary judgment against Carquest.

On January 25, 2000, Carquest filed an answer and a counterclaim, alleging wrongful termination of contract, breach of the implied duty of good faith and fair dealing, and violation of the Arkansas Franchise Practices Act, Ark. Code Ann. §§ 4-72-201 *et seq.* (Supp. 2003). To support these claims, Carquest states that the Carquest distributorship constituted a "franchise" and that GPI "arbitrarily and wrongfully terminated the parties' contractual

arrangements which has resulted in the destruction of [Carquest's] business and the loss of the considerable investment that [Carquest] made in building the distributorship." The counterclaim further alleges:

9. With respect to the events which led up to the termination of Defendants' distributorship, in the summer of 1999, Carquest was given the option by GPI to purchase a new Polaris computer from GPI for the amount of $24,000.00 which would enable Carquest to utilize state of the art computer equipment, provide enhancements that its existing computer system did not have in the form of a billing schedule used in conjunction with a velocity pricing program, and which would be a depreciable asset of Carquest. GPI represented to [Carquest] that with this new computer system, and the new billing schedule and velocity programs, the computer would "pay for itself." Based upon the representations of GPI, Carquest purchased the new computer from a company, CCI/TRIAD, which is apparently a related company to GPI. Furthermore, although Carquest was not required to purchase the computer in order to continue doing business under the Amended Carquest Agreement, Carquest is aware of another Carquest Jobber who was allowed instead to buy an upgrade for its existing computer, which was identical to the existing computer that was being used by Carquest. Curiously, this option was never disclosed or offered to Carquest by GPI. The upgrade only cost $3,500.00 and the difference between the purchase price of a new computer and that of the upgraded posed an onerous burden upon Carquest which would have chosen the upgrade alternative if it had been given the opportunity to do so.

10. In or around August of 1999, following the purchase of the computer by Carquest, Carquest began experiencing significant problems with the computer which interfered with and impaired the operation of the business. [Carquest] registered several complaints with GPI and its computer servicing or liaison company, J-CON, requesting that the problems be corrected pursuant to the agreement under which [Carquest] purchased the computer. All of the requests for assistance by [Carquest] went unheeded and the problems with the computer continued.

Carquest asserts that GPI's unresponsiveness to Carquest's requests for help with the computer problems was the reason Carquest stopped payment on its $23,000.00 check to GPI. According to Carquest, GPI

retaliated and took actions "designed to run [Carquest] out of business and to terminate their distributorship." Carquest requests monetary compensation, including punitive and treble damages.

Carquest filed an amendment to answer and counterclaim, and GPI responded by generally denying the allegations in the counterclaim and filing an amended complaint. Almost four years later, on January 8, 2004, Carquest filed an amendment to the counterclaim and motion to proceed as a class action pursuant to Rule 23 of the Arkansas Rules of Civil Procedure. When the circuit court granted a motion for a more definite statement filed by GPI, Carquest filed a second amendment to counterclaim and motion to proceed as a class action. In that pleading, Carquest claims that GPI engaged in an illegal tying arrangement, forcing Carquest and members of the class to purchase computer hardware from GPI and software from Comparative Computing, Inc., at a price far above what Carquest could have paid for the same equipment on the open market. GPI then filed a motion to dismiss the second amendment to counterclaim and motion to proceed as a class action, arguing that the illegal tying arrangement alleged in the amended counterclaim was governed by the Sherman Anti-Trust Act, 15 U.S.C. § 1 *et seq.*, and its four-year statute of limitations. According to GPI, the illegal tying claim was barred by the statute of limitations because the amended counterclaim was filed more than four years after August, 1999, the alleged purchase date of the computer.

At the hearing on GPI's motion to dismiss, Carquest insisted that the illegal tying arrangement was not governed by the Sherman Act statute of limitations, and that the second amended counterclaim should relate back to the original counterclaim filed on January 25, 2000, pursuant to Ark. R. Civ. P. 15(c) (2004). Following the circuit court's request for further briefing, Carquest filed a supplemental brief to establish authority outside the Sherman Act for its illegal-tying-arrangement claim. In its brief, Carquest argued that the claim was appropriate under the Arkansas Unfair Practices Act ("AUPA"), Ark. Code Ann. §§ 4-75-201, *et seq.* (Supp. 2003), and that the claim was governed by the general five-year statute of limitations in Ark. Code Ann. § 16-56-115 (Repl. 1999). GPI responded, arguing the AUPA did not address illegal tying arrangements and could not support the claim. Furthermore, GPI contended that Carquest did not have standing under the AUPA to bring a claim against GPI because Carquest was a consumer and not in competition with GPI. On April 29,

2004, the circuit court entered an order granting the motion to dismiss, ruling that "[a]ny illegal tying arrangement is barred by the statute of limitations contained in the Sherman Anti-Trust Act. There exists no state law which prohibits illegal tying arrangements or gives rise to a cause of action related thereto." Carquest appeals that order. We assumed the instant appeal for caseload balance pursuant to Ark. R. Sup. Ct. 1-2(g) (2004).

▆▆ The order that is the subject of this appeal is not a final order. We have repeatedly held that, to be appealable, an order must be final and the finality of a trial court's order is governed by Ark. R. Civ. P. 54(b). *Stockton v. Sentry Insurance*, 332 Ark. 417, 965 S.W.2d 762 (1998). Rule 54(b) states,

> (1) *Certification of Final Judgment.* When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination, supported by specific factual findings. . .

> (2) *Lack of Certification.* Absent the executed certificate required by paragraph (1) of this subdivision, any judgment, order, or other form of decision, however designated, which adjudicated fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the actions as to any of the claims or parties, and the judgment, order, or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all of the parties.

Ark. R. Civ. P. 54(b)(2) (2004). Here, the parties have been involved in a long and intensive battle involving many claims and counterclaims, most of which are still outstanding. For example, in its original answer and counterclaim, Carquest asserts claims against GPI for (1) wrongful termination of contract, (2) breach of the implied duty of good faith and fair dealing, and (3) violation of the Arkansas Franchise Practices Act. The circuit court's order granting the motion to dismiss does not resolve any of those claims or any of the claims GPI alleges in its complaint. The order merely disposes of "any claim, whether federal or otherwise related to the alleged illegal tying arrangement." Moreover, Carquest failed to request certification pursuant to Ark. R.

Civ. P. 54(b)(1) (2004). In the absence of such a determination, an order is not final when it adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties. *Stockton v. Sentry Insurance, supra.*

Furthermore, we disagree with Carquest's suggestion that the order is reviewable under Rule 2(a)(9) of the Rules Appellate Procedure – Civil, which allows for the interlocutory appeal of orders granting or denying class certification. In its response to Carquest's supplemental brief, GPI expressly noted that the motion to dismiss did not address the issue of class certification:

> The issue before this Court regarding General Parts, Inc.'s Motion to Dismiss Second Amendment to Counterclaim and Motion to Proceed as a Class Action deals with two issues; specifically:
>
> 1. Is the "illegal tying" claim brought forward by [Appellants] timely, given that the Sherman Anti-Trust Act has a four-year statute of limitations; and
>
> 2. Is there a viable state law cause of action which prohibits "illegal tying" arrangements?
>
> No motion has been made regarding the viability of a class action nor are any other portions of the Counterclaim, amended or otherwise, sought to be dismissed by this Motion.

Moreover, the circuit court's order granting the motion to dismiss does not indicate that the court considered the issue of class certification. Despite the fact that the order is completely silent on the issue of class certification, Carquest proposes that the court's grant of the motion to dismiss should be treated as a denial of the motion to certify the case as a class action. Specifically, Carquest states as follows:

> Appellants were under an obligation, based on the entry of this order, to appeal, or forever lose their right of appeal, because this is clearly a subject of appeal under Rule of Appellant [sic] Procedure – Civil, Rule 2(a)(9), which provides that an appeal may be taken from a circuit court to the Arkansas Supreme Court from an order granting or denying a motion to certify a case as a class action in accordance with Rule 23 of the Arkansas Rules of Civil Procedure.

Yet, Appellate Rule 2(a)(9) only allows appeals from "an order granting or denying a motion to certify a case as a class action in

accordance with Rule 23 of the Arkansas Rules of Civil Procedure." Ark. R. App. P. – Civ. 2(a)(9) (2004). Though never expressly stated by Carquest, it appears to suggest that, because the circuit court dismissed the claim underlying the class action, the court effectively denied class certification. However, we have never held that dismissal of claims underlying a class action should equate to denial of class certification. Thus, where the underlying claims in a potential class action are dismissed, and those claims are fewer than all of the claims in the lawsuit, the dismissal of such claims without the resolution of the remaining claims does not constitute a "final order."

Appeal dismissed.

DICKEY, J., not participating.